REQUESTED BY: John Breslow Auditor of Public Accounts
In your opinion request letter, you state that some county veteran service officers in Nebraska have accumulated tax money in checking accounts and certificates of deposit over the years. This has occurred, by your understanding, because some county veterans service committees have requested that the full amount of their annual tax levy be paid to them at some point during the year. Any amounts not actually spent by those committees in connection with their duties were then retained by the county veterans service officer in an account. You state that, over the years, these amounts have accumulated to several thousands of dollars in some counties. You are apparently concerned about this situation because of the need for counties to account for these funds in their accounting records and budget documents. Consequently, you asked us "whether unused money in the possession of the county veterans service officer at the end of the fiscal year must be returned to the county treasurer?"
We have found no Nebraska statutes which directly address the question posed in your opinion request letter. However, several statutes have some bearing on the issue raised.
First of all, portions of Neb. Rev. Stat. § 80-102 (1996) specifically deal with the veterans aid fund process at issue:
 (1) The county veterans service committee shall meet at least once each year or on call of the chairperson or of any three members of the committee. It shall determine the amount it considers necessary for providing aid, including food, shelter, fuel, wearing apparel, medical or surgical aid, or funeral expenses for [various veterans in the county and their dependents] . . . . The county veterans service committee shall certify the amount so determined to the county board, which amount shall be reviewed and considered by the county board in making a levy for an aid fund.
 (2) The county board of each county shall annually make such levy or levies as needed to raise the required aid fund referred to in subsection (1) of this section as the county board determines is necessary, not exceeding one cent on each one hundred dollars upon the taxable value of all the taxable property of such county. Any unexpended balance of the aid fund at the end of any fiscal year shall remain in the fund, without reappropriation, for future use. The committee or a majority thereof shall fix the amount to be paid to each claimant, subject to any amounts in the aid fund, and promptly disburse the same to or for the benefit of the claimant. The county clerk shall issue a warrant to the committee or to the county veterans service officer as directed by the committee upon the county treasurer for such amount as the committee shall from time to time request and as amounts in the aid fund permit. The committee shall at the end of each year make a detailed report of its transactions to the county board. Such reports shall be accompanied with vouchers for all the money disbursed.
In addition to § 80-102, portions of a number of statutes pertaining to the county treasurer also have relevance to your inquiry. Neb. Rev. Stat. § 23-1601 (1997) states:
 It is the duty of the county treasurer to receive all money belonging to the county, from whatever source derived and by any method of payment provided by section 77-1702, and all other money which is by law directed to be paid to him or her. . . .
Neb. Rev. Stat. § 77-2312 (1996) also provides:
 The county treasurer of each and every county in the State of Nebraska shall deposit, and at all times keep on deposit for safekeeping in the state or national banks or capital stock financial institutions doing business in the county of approved and responsible standing, the amount of money in his or her hands collected and held by him or her as county treasurer. . . .
With respect to investment of county funds, Neb. Rev. Stat. §77-2315 (1996) states:
 A county treasurer may by and with the consent of the county board invest in United States Government bonds, bonds and debentures issued either singly or collectively by any of the twelve federal land bands, the twelve intermediate credit banks, or the thirteen banks for cooperatives under the supervision of the Farm Credit Administration, United States Treasury notes, bills, or certificates of indebtedness maturing within two years from the date of purchase, or in certificates of deposit. . . .
And with respect to the same topic, Neb. Rev. Stat. § 77-2340
(1996) provides:
 The county treasurers of the various counties of the state may, upon resolution of their respective county boards authorizing the same, make time deposits in banks or capital stock financial institutions selected as depositories of county funds under the provisions of sections 77-2312 to 77-2315. . . .
When the various statutes pertaining to the county treasurer which are cited above are considered together, it is apparent that the county treasurer is the primary county official with authority to take custody of county funds. In addition, the county treasurer is the primary county official with authority to deposit county funds in banks and to make investments of county funds for the county. In fact, with respect to the investment of county funds, we previously stated in 1977-78 Rep. Att'y Gen. 115 (Opinion No. 78, dated April 19, 1977) that § 77-2315 does not allow a county hospital board to independently invest surplus hospital funds. Instead, we indicated in that opinion that such investments must be made by the county treasurer.
On the other hand, while the statutes pertaining to the county treasurer cited above create specific responsibilities and authority for that officer, § 80-102 also specifically provides that county warrants for payment out of the veterans aid fund shall be made "to the [veterans aid] committee or to the county veterans service officer" who then are to promptly disburse the same "to or for the benefit of the claimant." It seems to us that this language clearly contemplates that the direct payments to or for claimants out of the veterans aid fund will be made in some fashion by the veterans service committee or the veterans service officer inasmuch as the treasurer's warrants are drawn to those officials rather than to the individual veterans aid claimants. Moreover, the year end report which is submitted by the veterans service committee must be accompanied by "vouchers" for all money disbursed. Under those circumstances, it does not seem to us that it is unreasonable or impermissible for the county veterans service committee or the veterans service officer to have a checking account in place to make direct disbursements to or for claimants under the veterans aid fund. In the absence of such an account, all direct disbursements of veterans aid monies would have to be made in cash.
We can find no direct statutory requirement that monies in a veterans aid checking account or other veterans aid monies in the possession of county veterans aid officials must be returned to the county treasurer at the end of each fiscal year.[1]
And, since those monies have been paid out of the county's veterans aid fund on warrants drawn on the county treasurer, those monies are not, strictly speaking, part of the county veterans aid fund maintained by the county treasurer.
Consequently, in the absence of any clear statutory direction in this area, we believe, in response to your specific question, that monies held by veterans service committees or veterans service officers in the various checking accounts referenced in your opinion request letter need not be returned to the county treasurer at the end of each fiscal year. However, we also believe that neither the veterans service committee nor the veterans service officer has authority to invest those funds in certificates of deposit or otherwise. That responsibility for county funds rests with the county treasurer.
It also seems to us that the practical solution to the problem raised in your opinion request is for the veterans service committees or veterans service officers in the counties at issue to voluntarily return any excess funds which have accumulated in their veterans aid checking accounts to the county treasurer in their county at the end of the fiscal year. Under § 80-102(2), those funds would have to be placed in the veterans aid fund for future use, where they would be available, as needed, for veterans aid. The county treasurer could then properly invest the funds to maximize the return on the monies available. In the alternative, county veterans service committees or veterans service officers could, in the future, request veterans aid funds under § 80-102 in the manner in which we believe that statute actually contemplates withdrawals, i.e., in sums as needed from time to time throughout the year rather than in one annual request for the entire levy. Under those latter circumstances, § 80-102 requires that the county board and other county officials make funds available to the veterans service committee to the extent that monies remain available in the veterans aid fund.
Sincerely yours,
 DON STENBERG Attorney General
 Dale A. Comer Assistant Attorney General
APPROVED:
Don Stenberg
Attorney General
[1] To the extent that your inquiry is motivated by a concern involving the necessity for an accounting for the funds in question, we would note that Neb. Rev. Stat. § 23-1608 (1997) requires an annual audit of "the books, accounts, records and affairs of all county officers in the county." Presumably, this would include the veterans service officer and the veterans service committee. Also, Neb. Rev. Stat. § 80-407 (Supp. 1997) requires quarterly reports of expenditures by each veterans service committee to its county, and § 80-102 requires a detailed end-of-the year report of transactions by the veterans service committee to the county board.